IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mitchell Sumpter,<br>*a/k/a Mitchell Lee Truman Sumpter,*<br>*a/k/a Mitchell L. Sumpter,*<br>*a/k/a Mitchell Lee Sumpter*, | ) ) ) ) ) | |
| Plaintiff,[1] | ) ) | C/A No. 8:14-cv-00180-MGL-JDA |
| v. | ) ) ) | **REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |
| A. Lane Cribb, Michael A. Schwartz, Major<br>Morton, Capt. Wineglass, Lt. Anderson,<br>Sgt. Harrison, Chaplain Williams, Food<br>Supervisor Walker, Sgt. Wragg, Sgt.<br>Harris, Sgt. Dryer, Sgt. Williams, Officer<br>Poincet, Officer Manor, Officer Gibbs,<br>Officer Oliver, Officer Perez, Officer<br>Robinson, Officer Matthews, Officer<br>Washinton, Sargent Teeter, Mr. Martin, Lt.<br>Clarey, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants.[2] | ) ) ) | |

This matter is before the Court on a motion for summary judgment filed by

Defendants. [Doc. 124.] Plaintiff is a pretrial detainee in the custody of the Georgetown

County Detention Center ("GCDC"). [Doc. 1.] Plaintiff is proceeding pro se and brought

---

[1]Plaintiffs Christopher Bonds, Jason Bratton, Jamarr Jones, Cornelle Gary, and Cedric Brockington were assigned separate individual civil action numbers and terminated from this action pursuant to an Order issued February 2, 2014. [Doc. 6.] On May 5, 2014, Percy Blackwell, Jr. moved to be a part of this class action. [Doc. 40.] The motion was denied and Blackwell was terminated from this action on May 6, 2014. [Doc. 44.]

[2]Some Defendants were added and some Defendants were terminated on March 6, 2014, when Plaintiff submitted his Compliant on the Court's form. [Doc. 1-10.] Defendant Georgetown County Detention Center was dismissed without prejudice and without issuance and service of process on April 30, 2014. [Doc. 37.] Defendants Nurse Connie, Nurse Dorean, and Dr. Reeves were dismissed pursuant to an Order issued September 18, 2014. [Doc. 119.]

this civil rights action pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28

U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge

is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit

findings and recommendations to the District Court.

Plaintiff filed this action on January 2, 2014, and filed an Amended Complaint on

March 24, 2014,[3] generally alleging deprivations of his constitutional rights. [Docs. 1, 25.]

Defendants filed the instant motion for summary judgment on October 22, 2014.  [Doc.

124.]  On October 23, 2014, the Court issued an Order in accordance with *Roseboro v.

Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary

judgment/dismissal procedure and of the possible consequences if he failed to adequately

respond to the motion. [Doc. 125.]  On December 11, 2014, and December 22, 2014,

Plaintiff filed responses in opposition to Defendants' motion.  [Doc. 133, 135.]  Accordingly,

the motion is ripe for review.

## BACKGROUND

As previously stated, Plaintiff is a pretrial detainee at GCDC.  [Doc. 25 at 1.]  He

contends that he was transferred from the Myrtle Beach Jail to GCDC on November 29,

2013, and placed in a medical protective custody unit.  [Doc. 25-5 at 13 ¶ 1.]  Plaintiff

alleges that as an indigent inmate he is only permitted to send two letters each week,

regardless of subject or content, in violation of his First Amendment rights; as a result,  he

---

[3]A prisoner's pleading is considered filed at the moment it is delivered to prison
authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In
this case, construing the filing date in the light most favorable to Plaintiff, this action was
filed on January 2, 2014 [Doc. 1-3 at 2 (signed and dated affidavit)], and his Amended
Complaint was filed on March 24, 2014 [Doc. 25 (signed and dated Amended Complaint)].

is unable to petition the government for a redress of his grievances or prepare himself for court. [Doc. 25 at 1–2.] Plaintiff asserts that GCDC does not have a reference cart or law library; therefore, he is unable to reference any legal authority in his arguments and is unable to defend himself in his criminal case. [*Id.* at 2.] Plaintiff alleges that he is not allowed to write to staff at GCDC and ask for legal help and instead must ask Captain Wineglass who will try to find certain documents on the computer. [Doc. 25-5 at 14 ¶ 7.] Plaintiff contends that the lack of access to legal documents and the small number of public defenders in Georgetown County encourages inmates to plead guilty to their charges because they lack knowledge of the law. [*Id.*]

Plaintiff also alleges that his health has been jeopardized by the presence of black mold at GCDC. [*Id.* at 2.] Plaintiff maintains that he began to itch and to experience headaches, chest pain, nose bleeds, and shortness of breath but was denied treatment when he complained to medical. [*Id.* at 13 ¶ 2.] Plaintiff contends that on January 14, 2014, after he complained several times, an inmate worker was sent to Plaintiff's cell but only wiped a spot off the ceiling. [*Id.* at 13 ¶ 3.] Plaintiff alleges that he complained to his cell mate who told Plaintiff he was breathing black mold and every officer at GCDC was aware that black mold existed at the detention center. [*Id.* at 13 ¶ 4.] Plaintiff maintains he felt "sad [and] down" because the black mold was everywhere at GCDC—in the cell blocks, the day room, and over the ceilings—and that he became afraid to eat off the trays because they were rubber and could hold water. [*Id.* ¶ 5.] Plaintiff asserts that he could not sleep out of fear and became very depressed. [*Id.* at 13 ¶ 6.] Plaintiff alleges that theses conditions amount to cruel and unusual punishment. [*Id.* at 14. ¶ 7.]

3

Plaintiff requests that the Court order a speedy hearing of his declaratory judgment motion; that he receive full access to the courts and a release from custody if he is not provided such access within 30 days of his motion; $1,000 for the violation of his First Amendment rights; full protection from any retaliation by any government officials; appointment of counsel; prompt medical attention; fair housing; proper feeding free from black mold; a court-appointed psychiatrist; $25,000 for each day spent in unconstitutional conditions; $1,000,000 for future illnesses that may spread to others; $1,000,000 for mental anguish and suffering; that GCDC be torn down; that a law library be established for all detainees at GCDC; that he receive testing and treatment for black mold inhalation; $2,500 for each day he was mentally challenged by black mold and mental anguish; $1,000,000 for pain and suffering; $2,000,000 in punitive damages; and release from his conditions of confinement.  [Docs. 25 at 2–3; 25-5 at 3; 25-5 at 15.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court

4

may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

6

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

7

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Conditions of Confinement**

Plaintiff alleges the black mold present at GCDC creates an unconstitutionally dangerous condition and that, as a result of the black mold, he has suffered numerous physical and psychological problems, including harsh coughs, chest pains, burning eyes, itchy skin, crawling skin, nose bleeds, shortness of breath, headaches, and other illnesses from exposure to black mold.[4] [Docs. 25-5 at 1–3; 135-1 ¶¶ 2–3.] He further argues the

---

[4]Plaintiff also avers that he has been exposed to "T.B." [Doc. 135-1 ¶¶ 5–6]; however, this claim is not properly before the Court. *See White v. Roche Biomedical Labs., Inc.*, 807 F.Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted

staff at GCDC is aware of the conditions.[5]  [Doc. 135-1 ¶¶ 2–3.]  Defendants contend that

Plaintiff has not established a constitutional violation or that he suffered a significant injury.

[Doc. 124-1 at 10.]   The Court agrees Plaintiff has failed to establish a violation of his

constitutional rights with respect to the conditions of his confinement.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are

evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is

used to evaluate conditions of confinement for those convicted of crimes.  *See City of*

*Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Unlike convicted inmates, pretrial

detainees have not been adjudicated guilty of a crime and may not be subjected to any

form of "punishment."  *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).  To establish

that a condition or restriction of confinement is constitutionally impermissible "punishment,"

a pretrial detainee must show "either that it was (1) imposed with an expressed intent to

punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in

which case an intent to punish may be inferred."  *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520,

538–40 (1979)).  Courts may infer that a restriction or condition is not reasonably related

to a legitimate governmental objective, and is therefore punishment, if the restriction is

_____

to raise a new claim in response to a motion for summary judgment").

[5]Plaintiff filed two similar documents entitled "Plaintiff Notice of Objection to
Defendants Motion for Summary Judgment, Sworn Affidavit, [and] Case Law Helling et al.
v. McKinney" that the Clerk appropriately construed as responses in opposition to the
motion for summary judgment. [Docs. 133, 135.]  The documents are identical except that
Docket Entry 135 has not included the first two pages of *Helling v. McKinney*, 509 US 25
(1993)  [*see* Doc. 133-1 at 6–7 (containing the missing pages)] and has added a copy of
a grievance and a letter to the Clerk [Docs. 135-2 at 17, 135-3].  Both responses consist
of an affidavit by Plaintiff and attached case law.  [Docs. 133, 135.]  The Court will refer to
Docket Entry 135 except where reference to Docket Entry 133 is necessary.

arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See Bell*, 441 U.S. at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as

10

possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel."). Exposure to black mold may, in an appropriate case, satisfy the objective component of an Eighth Amendment violation. *Compare Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (finding that mold in the ventilation system violated the Eighth Amendment) *with Causey v. Allison*, Civil Action No. 1:08-155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (deciding there was no Eighth Amendment violation where a prisoner claimed black mold was growing in the shower but "admit[ed] that he . . . had no medical problems resulting from the black mold").

Here, Plaintiff has failed to satisfy the subjective component of a Fourteenth Amendment violation. Plaintiff has not presented sufficient evidence to raise a material issue of fact regarding whether Defendants actually knew the alleged black mold was present in sufficient quantities to present an excessive risk to the health of inmates. In Plaintiff's affidavit, he avers that the staff at GCDC was on notice of the presence of black mold because they had been informed by "inmate staff, grievance [and/or] by verbal conv[er]sation, by [Plaintiff] in person." [Doc. 135-1 ¶ 3.] Although the Court must liberally construe the pro se complaint, Plaintiff must do more than make mere conclusory statements to state a claim. *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994). Plaintiff also submitted an exhibit purporting to show the black mold at GCDC. [Doc. 25-5 at 6.] However, Plaintiff has not submitted any admissible evidence establishing the chain of custody of the exhibit, that the exhibit came from GCDC, or that the exhibit shows more than an isolated occurrence but, instead, is representative of conditions throughout GCDC.

11

He also fails to explain how that evidence would tend to exclude the possibility that prison staff should have known that the mold was a health threat but did not. Moreover, Defendants have provided affidavits from Defendants Wineglass, Drye,[6] and Clarey, who all aver that, to their knowledge, there is no black mold problem in any part of GCDC. [Docs. 124-2 ¶ 5; 124-3 ¶ 3; 124-4 ¶ 5.] Accordingly, summary judgment is appropriate with respect to this claim.[7]

_____

[6]Plaintiff refers to Defendant Drye as Defendant Dryer. [Doc. 25-5 at 12.]

[7]Additionally, to the extent that Plaintiff alleges liability against any Defendant on the basis of supervisory liability, that claim must fail. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), supervisory liability may no longer be a viable § 1983 claim). Here, Plaintiff has failed to make the requisite showing.

12

**Access to Courts**

Plaintiff contends that he has been denied access to courts because he is limited to sending two letters each week[8] and GCDC does not have a law library. [Doc. 25 at 1–2.] Plaintiff further states the administration at GCDC does not allow him to write or grieve other state officials or the courts and has denied him stamps, envelopes, and paper. [Doc. 135-1 ¶¶ 7–8.] Defendants argue that Plaintiff has not established that he has suffered a specific injury resulting from the denial. [Doc. 124-1 at 7–8.] The Court agrees Plaintiff has not established he has suffered an actual injury.

A prisoner has a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (citing *Ex parte Hull*, 312 U.S. 546 (1941)). To state a claim of a violation of that right, a prisoner must include in his complaint factual allegations that tend to support his claim of deprivation of access. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). "A prisoner must also identify an actual injury resulting from official conduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993)). An actual injury must be more than theoretical deficiencies, it is a showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Plaintiff's allegation that he is being denied access to courts because he is allowed to mail only two letters each week does not rise to the level of a constitutional violation. As

---

[8]The Court is aware that at various points in his pleadings and accompanying documents, Plaintiff inconsistently alleges that he is permitted to send two letters each week or two letters every ten days [*see, e.g.,* Docs. 25 at 1; 25-1 ¶ 3; 25-2 at 1–2]; and this discrepancy is not resolved by the responses to Plaintiff's grievances by GCDC staff [*see, e.g.,* Doc. 25-2 at 1–3]. However, whether Plaintiff is permitted to send two letters every ten days or every week is not dispositive of Plaintiff's claim.

an initial matter, there is no inherent constitutional violation in limiting an indigent detainee's mailings. *See Hoppins v. Wallace*, 751 F.2d 1161, 1162 (11th Cir. 1985) (holding that a policy allowing an indigent inmate two free stamps each week was reasonable); *Barnes v. Doby*, C/A No. 4:05-02073-MBS-TER, 2007 WL 2908574, at *5 (D.S.C. Aug. 13, 2007), *Report and Recommendation adopted by* 2007 WL 2908582 (D.S.C. Sept. 30, 2007) ("[I]ndigent inmates may not be denied reasonable amount of postage to mail legal mail, [but] they do not have unlimited right to free postage in connection with right of access to court." (citing *White*, 886 F.2d at 723)). Further, to state a such a claim, an inmate must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts. *See King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (finding that the appropriate judicial inquiry "should focus on whether the individual plaintiff before [the court] has been denied meaningful access"); *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978) ("Some delays in access to the courts are inevitable."). A prisoner must also allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts. *White*, 886 F.2d at 724.

Plaintiff fails to allege that he has suffered an actual injury or specific harm resulting from the limitations on his mailings. Plaintiff has not established that restricting him to two letters each week has denied him the opportunity to file documents necessary to the continuation of any pending action. In fact, since January 2014, Plaintiff has filed numerous motions in this Court, including motions for use of law library, postage, and other legalities [Doc. 53]; to appoint counsel [Docs. 53, 88, 104]; for physical and mental evaluations [Doc. 71]; for a temporary restraining order [Doc. 72]; for entry of default as to Defendants [Doc.

14

78]; and to dismiss Nurse Connie, Nurse Dorean, and Dr. Reeves [Doc. 93]. Plaintiff has also been able to respond to motions made by Defendants and rulings and recommendations by this Court. [*See, e.g.*, Docs. 99 (objecting to a Report and Recommendation and Order); 103 (filing additional attachments to his Objections); 133 and 135 (both responding in opposition to Defendants' motion for summary judgment).]

Plaintiff has also failed to establish that he has suffered a specific injury as a result of the absence of a law library at GCDC. The Fourth Circuit Court of Appeals has ruled that the Constitution of the United States does not require every local jail to have a law library. *See Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987). The holding in *Magee* is based on the knowledge that county jails are generally short-term facilities, wherein "the brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Id.*, 810 F.2d at 452 (quotation marks and citation omitted). Here, Plaintiff has failed to submit any objective evidence showing any actual injury arising out of the Defendants' failure to provide him with a law library or reference cart. In fact, Plaintiff attached copies of legal authority to his responses in opposition to the motion for summary judgment. [Docs. 133-1, 135-2.] Moreover, Plaintiff's general allegations that he has been unable to prepare for his criminal case and other inmates have been forced to plead guilty because they were not able to prepare a defense fails to specify how Plaintiff has been prejudiced and is too speculative to allow Plaintiff to survive a motion for summary judgment. *See Strickler*, 989 F.2d at 1383 (finding Plaintiff's claim was subject to dismissal because "he ha[d] alleged no specific problem he wished to research and . . . no actual injury or specific harm which . . . resulted to him by his limited access to the jail library or its limited contents." (quotation marks omitted)). Accordingly, Plaintiff has failed to demonstrate he

has been unconstitutionally deprived access to courts; and summary judgment is appropriate with respect to this claim.[9]

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 124-1 at 8–9.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[9]In Plaintiff's affidavit, he avers that "now that GCDC is aware of [Plaintiff's] law suit, they deny [him] all assistance." [Doc. 25-1 ¶ 6 (internal quotation marks omitted).] To the extent Plaintiff's alleges that Defendants retaliated against him for filing his lawsuit, Plaintiff has failed to create a genuine issue of material fact. To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (*citing Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). Moreover, courts treat with skepticism retaliation claims by prisoners because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Id.* at 74.

Plaintiff alleges that Defendants' retaliation was in response to the lawsuit Plaintiff filed against Defendants; however, Plaintiff has provided no evidence beyond his own conclusory statements to create a genuine issue of material fact. Accordingly, summary judgment is appropriate with respect to this claim.

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the

normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.[10]

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

May 1, 2015
Greenville, South Carolina

---

[10]Defendants also argue that they are entitled to summary judgment with respect to an excessive force claim. [Doc. 124-1 at 6–7.] The Court does not believe Plaintiff's Complaint or Amended Complaint makes such a claim and, accordingly, will not address this issue.

Further, as already stated, Nurse Connie, Nurse Dorean, and Dr. Reeves were previously dismissed from this action [Doc. 119.] To the extent Plaintiff attempts to raise a claim of medical deliberate indifference against any non-medical personnel defendant, his claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner. *See id.* Here, Plaintiff alleges that he reported his illnesses to medical staff and was denied treatment [Doc. 25-5 at 13 ¶ 2]; however, Plaintiff has proffered no evidence that any non-medical personnel defendant engaged in the type of conduct required by controlling case law to establish an constitutional medical claim of deliberate indifference.